**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **WANDA BRAZILE,** | ) CASE NO. 1:09CV1476 |
| | ) |
| **Plaintiff,** | ) JUDGE DAN AARON POLSTER |
| | ) |
| vs. | ) **MEMORANDUM OPINION** |
| | ) **AND ORDER** |
| **MICHAEL J. ASTRUE,** | ) |
| **Comm'r of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

This case is before the Court, pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for disability insurance benefits ("DIB"), 42 U.S.C. §§ 416(I), 423. The case was referred to Magistrate Judge David S. Perelman for preparation of a Report and Recommendation ("R&R") pursuant to 28 U.S.C. §636 and Local Rule 72.2(b). The R&R recommends that the Commissioner's decision be reversed and judgment entered in Plaintiff's favor finding that she is entitled to an award of benefits pursuant to her application of September 28, 2004. (Doc. No. 23). The Commissioner timely filed objections to the R&R (Doc. No. 24), to which Plaintiff filed a Reply (Doc. No. 26). Having reviewed the record, the R&R, the

objections and the reply thereto and for the reasons articulated below the Court **OVERRULES** the Commissioner's Objection, **ADOPTS** the conclusions of the R&R**, REVERSES** the Commissioner's decision and awards benefits to Brazile.

**I.**

**A.    Background**

Wanda Brazile was born in 1954 and was a 48 year old woman as of September 30, 2003, her date last insured.  She completed the 10th grade and went on to receive her GED and completed schooling at Mansfield Business College to become a Certified Nursing Assistant.  She worked in patient care as a nursing assistant and home health aide from 1978 through June 2001, when she became unable to work because of her alleged disability.  She received Worker's Compensation Benefits until April 15, 2004.

On September 28, 2004, Brazile filed her application for DIB, alleging a disability onset date of June 21, 2002, due to primarily to depression and secondarily to various physical ailments including, lateral epicondylitis (tennis elbow);  back, shoulder and neck pain attributed to herniated discs, degenerative disc disease and spinal cord stenosis; carpal tunnel syndrome; and a laundry list of other generalized complaints.  The application was supported by extensive medical records from Brazile's treating physicians, and Brazile's testimony of anxiety attacks, depression, and constant debilitating pain.[1]

---

[1]    In her application for benefits, Brazile claimed both physical and psychological disability.  The Magistrate Judge recommended affirming the Commissioner's finding that Brazile's physical condition did not render her disabled as of September 30, 2003, the date last insured.  Because the Court adopts the Magistrate Judge's conclusion regarding Brazile's physical disabilities, this opinion will only deal with the evidence concerning her psychological condition.

-2-

On September 7, 2006, the ALJ entered his decision finding Brazile not disabled. That ruling, however, was vacated by the Appeals Council in an order entered December 20, 2006 instructing the ALJ to conduct an evaluation of Brazile's pain and /or subjective complaints and to give further consideration to Brazile's maximum residual functional capacity ("RFC"). A second hearing was held on May 7, 2007.

During the administrative hearing, Brazile testified that she began seeing a psychiatrist in or about 2003 or 2004, but that she had long suffered from panic attacks. She testified that she was seen twice in the emergency room for chest pains. She also testified that she has felt sad for a considerable amount of time prior to seeking treatment, in part due to the recent deaths of her sister and her husband. She testified that due to constant pain, she is unable to care for herself or her home and has no social life. Brazile also testified at length to the treatments prescribed by her physicians, including medication, physical therapy and recent surgeries.

Dr. John Sassano, Brazile's primary care physician since 2002, submitted a disability report dated December 19, 2003 in which he diagnosed Brazile with depression among many other health problems including back pain. Dr. Sassano referred Brazile to Dr. Scot Miller, an orthopaedic surgeon, on September 3, 2003 for treatment of her back pain. Dr. Miller had last seen Brazile five years earlier and noted some improvement except for Brazile's continued complaints of back pain. Based on his examination and an earlier MRI, he diagnosed Brazile with degenerative joint disease and spinal stenosis and prescribed physical therapy. The ALJ gave his opinion substantial weight.

Dr. James Helmuth, Brazile's psychologist since March 2004, submitted a disability report dated May 21, 2004 in which he diagnosed Brazile with severe dysthymia beginning in 2000 and major depressive disorder since 2002. His diagnosis was based on his interviews and therapy sessions with Brazile in which she recounted her medical, family, and work history and on the basis of psychological testing. He noted she scored 37 on the "Beck Depression Inventory," placing her in the "severe clinical depression" category, and he assigned a GAF of 45. He concluded that on the basis of Brazile's depression alone, she could not "cope with the stress of any employment now or in the foreseeable future." *Tr. 272-77.* The ALJ failed to indicate the weight given to Dr. Helmuth's report.

Dr. Chander Mohan began treating Brazile for depression in 2005 and submitted an Assessment of Ability to do Work Related Activities dated April 7, 2007 in which he diagnosed her with depressed mood disorder, chronic pain, spinal cord stenosis and degenerative disc disease. He noted her depression was due in part to grief from the deaths of her parents, sister, and husband. He opined that the date of severe onset was 2001.

Nancy Berger, Brazile's therapist since 2005, submitted an Assessment of Ability to do Work Related Activities dated April 16, 2007 in which she diagnosed Brazile with major depressive disorder recurrent, chronic pain, spinal cord stenosis and degenerative disc disease, and bereavement issues. She opined that the earliest date that Brazile's symptoms became severe was 2001. The ALJ gave the opinions of Dr. Mohan and therapist Berger minimal weight.

Dr. Melvin Ross appeared at the hearing as a medical expert at the request of the Commissioner. He opined that Brazile's depression equaled the disability listings effective

-4-

May 20, 2004. While he initially opined that Brazile was not disabled as of date last insured, he ultimately backed away from that conclusion, stating that it was up to the ALJ. Dr. Ross never examined Brazile and based his testimony solely on his review of the medical records available, including exhibits submitted the day of hearing. When asked by Brazile's attorney whether he disagreed with the date of onset findings of Dr. Mohan and therapist Burger, he stated that he did not have any opinion "one way or the other." *Tr. 654.*

**B.    The ALJ's Decision**

The ALJ determined Brazile suffered from severe depression, but that the date of onset was May 2004 and not any earlier. The ALJ rejected the conclusions of Brazile's treating physicians dating the onset of severe depression in 2001/2002 as "speculative" and "not plausible" due to the fact that Brazile did not seek psychological treatment until 2004. The ALJ also stated he was precluded from considering Brazile's depression prior to May 2004. Finally, the ALJ also found that Brazile was not fully credible regarding the intensity, persistence and limiting effects of her symptoms and concluded that Brazile had the RFC to perform a full range of light work, and, therefore, was not disabled through the date last insured. The Appeals Council denied Plaintiff's request for review almost two years later on April 29, 2009, and Plaintiff commenced this action for judicial review.

**C.    The Magistrate Judge's Report and Recommendation**

In his very thorough R&R, Magistrate Judge Perelman concluded that the ALJ's decision was not supported by substantial evidence. The Magistrate Judge found that the ALJ did not provide a sufficient basis to reject the conclusions of Brazile's treating physicians; that the ALJ concurred in a non-existent opinion of a non-examining medical expert; and that the

ALJ committed legal error when he failed to conduct a retrospective analysis of the level of severity of Brazile's depression before the date last insured as required by SSR83-20.

In his objections, the Commissioner argues that the ALJ reasonably considered all relevant evidence. The Commissioner asserts that the ALJ reasonably evaluated the onset date of Brazile's depression on the basis of testimony of Brazile, a medical expert, and the record as a whole. The Commissioner argues that the ALJ's rejection of treating physicians' opinions was warranted by the absence of any psychiatric treatment records prior to date last insured and Brazile's less than credible subjective statements.

## II.

### A.  Standard of Review

The Court has conducted a *de novo* review of this case, and concludes that the Commissioner's objections are not well taken, and that the Magistrate Judge's recommendation concerning Brazile's mental/psychological conditions should be adopted. Judicial review of the Commissioner's decision is limited to determining whether the ALJ employed the proper legal standards in reaching his conclusion and whether there is substantial evidence in the record to support the Commissioner's factual findings. *See* 42 U.S.C. §§ 405(g), 1363(c)(3) (1988); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion, even if that evidence could support a decision the other way. *Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) (citations omitted). It is more than a scintilla, but less than a preponderance, of evidence. *See Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.1994) (per curiam).

In order for a claimant to be eligible for Social Security disability insurance benefits, he must prove that he is disabled. The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity due to any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner must undergo the following five-step sequential analysis: (1) a claimant is not disabled if he is presently employed; (2) a claimant is not disabled if his impairment is not "severe;" (3) a claimant is disabled if his impairment meets or medically equals a listed impairment; (4) a claimant is not disabled if he has the residual functional capacity to perform his former work; and (5) a claimant is not disabled if he has the residual functional capacity to perform any other substantial gainful activity. 20 C.F.R. § 404.1520(a)-(f); *Clinker v. Apfel*, 1999 WL 673388, *2 (N.D.Ohio Jul. 19, 1999). A determination of disability requires an affirmative finding at step three, or a negative finding at step five. *Clinker*, 1999 WL 673388, at *2.

The claimant bears the burden of proving steps one through four, after which the burden shifts to the Commissioner to prove step five. "To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Doud v. Comm'r of Soc. Security*, 314 F. Supp. 2d 671, 677 (E.D. Mich. 2003) (quoting *Varley v. Sec'y*, 820 F.2d 777, 779 (6th Cir. 1987)).

**B.    Analysis**

The Commissioner argues the ALJ's assessment of the onset date of Brazile's depression was reasonable and based on the record as a whole. The Commissioner contends that the ALJ's decision is supported by the testimony Dr. Ross and the fact that Brazile had not sought treatment for mental illness or been diagnosed with a psychological impairment prior to 2004.

Plaintiff argues that the ALJ erred by not giving proper weight to the medical opinion of Brazile's treating physicians. As a result, Plaintiffs contend the ALJ failed in his duty to do a retrospective analysis of Plaintiff's condition as required by SSR 83.20. SSR 83-20 provides that an ALJ establish the onset date of disability of a nontraumatic origin by inference based upon consideration of the claimant's allegations and work history, other evidence concerning the severity of impairment, and medical evidence. The Sixth Circuit has observed:

> In particular, the regulation demands that the claimant's claimed onset date be adopted if it is consistent with all the evidence available....where the medical evidence supports the existence of a disability which was diagnosed "only at a much later date the Secretary would not be substantially justified in relying on the date of diagnosis as the date of disability."

*Willibanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 304 (6th Cir. 1988) (quoting *Swanson v. Sec'y of Health & Human Servs.*, 763 F.2d 1061, 1066 n.2 (9th Cir. 1985). The ALJ did not adhere to SSR 83.20 when he concluded that the first date of diagnosis, May 2004, should be adopted as the onset date because no earlier records were available and when he concluded he was "precluded" from evaluating Brazile's condition before that date. The medical evidence within the record clearly supports Brazile's claimed onset date, whereas there is no medical evidence to the contrary.

-8-

"The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference." *Harris v. Heckler,* 756 F.2d 431, 435 (6th Cir. 1085)*; see also King v. Heckler,* 742 F.2d 968, 973 (6th Cir. 1984)**.** While an ALJ is not bound by the opinions of a plaintiff's treating physician, he must set forth some basis for rejecting these opinions. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).

The ALJ rejected the opinions of Dr. Helmuth, Dr. Mohan, and therapist Berger as "not plausible" and "speculative" and relied on testimony of Dr. Ross, who according to ALJ "opined that through the date last insured, the claimant did not equal or meet a listing." *Tr. 30.* The ALJ's characterization of Dr. Ross' testimony is inaccurate. When asked by Plaintiff's council if he felt that Dr. Mohan's and therapist Berger's reports supported an earlier date of onset, Dr. Ross responded, "I don't have an opinion on it one way or the other." *Tr. 654.*

Relying on his own view of plausibility and concurring in Dr. Ross' purported testimony, the ALJ rejected the opinions of Brazile's treating physicians. However, the testimony of a non-examining physician cannot provide a sufficient basis for rejecting the opinions where, as here, it is contrary to the opinions of the claimant's treating physicians and is, therefore, entitled little weight. *Shelman*, 821 F.2d at 321. Further, the ALJ made no finding that the opinions of Plaintiff's treating physicians were not supported by sufficient medical data. In fact, there are no significant contrary medical reports and Brazile's treating physicians findings should have been given deferential weight. Thus, the ALJ applied an erroneous legal standard with respect to the opinions of plaintiff's treating physicians.

The Court also finds that the ALJ's rejection of Plaintiff's testimony as lacking credibility is not supported by substantial evidence. Findings of credibility must be made based on the entire record, including the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. SSR 96-7p. "If the ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir.1994) (citing *Auer v. Sec'y of Health & Human Servs.*, 796 F.2d 146, 150 (6th Cir. 1987)).

The ALJ rejected the Plaintiff's allegations noting:

> After considering the evidence of record, I find that claimant's medically determinable impairments could have been reasonably expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms is not entirely credible. . .
>
> . . . She stated that she began having panic attacks after her sister died in 1998. Furthermore, a patient died after she cared for him over five hears and her husband died recently. Although the claimant has suffered personal losses, and she has severe physicail impairments, the evidence of record does not support the severity of the physical or psychological impairments that the claimant alleged prior to her date last insured. Therefore, the claimant's ability to perform basic work activity through the date last insured was not precluded at all levels of exertion.

These facts, as summarized by the ALJ, certainly do not amount to substantial evidence that the Plaintiff exaggerated her functional disability in light of the fact that none of the doctors who examined her expressed any doubts about her symptoms or felt she was exaggerating her complaints. In fact, there is substantial evidence in the record that Brazile has consistently documented her complaints of pain and psychological distress in all questionnaires

-10-

and forms submitted throughout the disability process. She also remained consistent in her complaints of pain and sadness to her treating physicians. Furthermore, during the hearing, the vocational expert testified based on a hypothetical that was very detailed and tailored accurately to portray a hypothetical person similarly situated to Brazile. Based on the hypothetical, the vocational expert opined that, "It would be my opinion that such a person would be unable to perform most unskilled jobs at the light or sedentary level..." *Tr. 656.* The ALJ completely ignored the testimony of the vocational expert without explanation in finding that Brazile was capable of performing a full range of light duty work. In short, there is simply no substantial evidence that Plaintiff could be employed in any work environment.

**C.     Award of Benefits**

Having determined that the ALJ's denial of benefits is not supported by substantial evidence, the Court has two options: remanding for another hearing before a different ALJ, or awarding benefits to Brazile.

This case has had a tortious history. Brazile filed for benefits in September 2004, more than six years ago. She has had two hearings. The September 2006 decision from the first hearing denying benefits was vacated by Appeals Council. Brazile's second hearing was held on May 7, 2007, and on May 17, 2007, the ALJ again denied DIB. Inexplicably, however, the Appeals Council took two years, until April 29, 2009, to render its decision affirming the denial of benefits. Magistrate Judge Perelman issued his R&R on September 21, 2010. After receiving the Commissioner's objections and soliciting a response from Brazile, the Court held a telephonic conference with counsel. The Court urged counsel to seriously consider settling this case, because of the lenght of time it has been pending. The Court advised counsel that if the

parties opted not to settle, the Court would decide the case one way or the other, and would not remand it for a third hearing.  By letter shortly thereafter, counsel advised the Court that they were unable to resolve the case.

The Sixth Circuit Court of Appeals has held:

> If a court determines that substantial evidence does not support the Secretary's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.

*Faucher v.  Sec'y*, 17 F.3d 171, 176 (6th Cir.  1994).

The Court has concluded that there is not substantial evidence to support the Commissioner's decision denying benefits to Brazile for her psychological condition and that all essential factual issues have been resolved and the record adequately establishes Brazile's entitlement to benefits.  In point of fact, there was no medical evidence produced at hearing to support the ALJ's conclusion that Brazile was not entitled to benefits.  Dr. Ross, the medical expert upon which the ALJ relied, never examined Brazile.  While Dr. Ross initially rendered a conclusion at the hearing that Brazile was not disabled as of September 30, 2003 by her psychological condition, he backed away from that conclusion at the end.  He opined that Brazile had become disabled by her anxiety and depression, and the only issue was the onset of that disability.  In resonse to a question from Brazile's counsel as to whether he disagreed with Dr. Mohan's conclusion that the onset of disability was 2001, he replied, "No, I don't have any opinion one way or the other."

Brazile's treating physicians all concluded that the onset of her disability predated the date last insured.  While it is true that none of them examined Brazile until 2004, they were all qualified to render an opinion as to the onset of Brazile's disability.  They were far more

qualified than Dr. Ross, who never examined Brazile and was just reviewing records in 2007. The ALJ appeared to be influenced by the fact that Brazile did not seek treatment until after date last insured, but that cannot be determinative of the onset of her depression.

Accordingly, it would be grossly unfair to Brazile to prolong this case any further, particularly since much of the delay is the fault of the Social Security Administration. Given that the Commissioner produced no medical opinion testimony at hearing to counter the opinions of Brazile's treating physicians, the Court adopts the conclusions of the Magistrate Judge and awards disability benefits to Brazile.

### V.

For the reasons stated above, the Court concludes that the ALJ's decision was not supported by substantial evidence, therefore the Court **OVERRULES** the Commissioner's Objection, **ADOPTS** the Report and Recommendation of Magistrate Judge Perleman (Doc. No.23)**, REVERSES** the Commissioner's decision and awards benefits to Brazile.

**IT IS SO ORDERED.**

 **/s/Dan Aaron Polster   December 22, 2010**
**Dan Aaron Polster**
**United States District Judge**